IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONALD MURRAY,

                Petitioner,

        v.                      CASE NO.  08-3096-SAC

SAM CLINE,
et al.,

                Respondents.

RONALD MURRAY,

                Petitioner,

        v.                      CASE NO.  08-3125-SAC

SAM CLINE,

                Respondent.

## MEMORANDUM AND ORDER

The above petitions for writ of habeas corpus were filed weeks apart pursuant to 28 U.S.C. § 2254 by petitioner and consolidated by the court for all purposes. Respondents filed an Answer and Return (A&R) responding to each Petition, and petitioner has filed a Traverse to each Answer and Return. Having considered all materials filed, the court finds as follows.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

A summary of the background facts is quoted from State v. Murray, 130 P.3d 593, *1, 2006 WL 768907 (Kan.App. 2006)(Table):

> Ronald L. Murray, a.k.a. Travis L. Murray, and
> Ryan Dupree savagely beat Kenneth Alexander
> outside a bar in Kinsley on June 1, 2003, because
> Murray thought Alexander was a homosexual and
> Dupree hated him for selling him drugs. Dupree
> testified at Murray's trial that Murray hit and
> kicked Alexander 5-15 times while wearing

steel-toed boots.   After the beating, Alexander suffered from bruises on his face and back and Broca's aphasia, a speech condition typically caused by brain damage.   Alexander's CAT scan revealed several brain contusions and intercranial bleeding.   As a result of the beating, Alexander suffered permanent brain damage with memory and speech problems.

Petitioner was charged with one count of attempted murder in the second degree in violation of K.S.A. 21-3402(a)[1], a severity level 3 person felony.   Although no transcript is provided of the taped proceeding, the journal entry in the record indicates this charge was read and discussed with Mr. Murray at his First Appearance on July 1, 2003, and he indicated he understood the charge.   He was tried and convicted by a jury in Edwards County District Court, Kinsley, Kansas, of aggravated battery in violation of K.S.A. 21-3414(a)(1)(A)[2], a severity level 4 person felony.   He was sentenced on April 21, 2004, to 71 months in prison.


**Direct Appeal**

Mr. Murray appealed his conviction and sentence to the Kansas Court of Appeals (KCA), which affirmed.   <u>State v. Murray</u>, 130 P.3d at 593.   He chose to represent himself on direct appeal and in his pro se "Brief of Appellant" raised the following issues that he now also presents in his federal Petition:

Issue   III.     The   court   erred   in   denying [petitioner's] motion in limine (with respect to

---

[1]     K.S.A. 21-3402(a) defined "Murder in the second degree" as "the killing of a human being committed . . . [i]ntentionally . . . ."   The definition of attempt is "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof . . . ."   K.S.A. 21-3301(a).

[2]     K.S.A. 21-3414(1)(A) defined aggravated battery as "intentionally causing great bodily harm to another person or disfigurement of another person . . . ."

2

references to skinheads and their feelings about homosexuals.)

Issue IV. The trial court erred in denying [petitioner's] motion for mistrial (based on violation of order in limine).

Issue V. The prosecutor committed misconduct by goading [a] state's witness into violating [a] limine order.

Issue VI. The prosecutor committed misconduct by withholding exculpatory evidence.

Issue VIII. The prosecutor committed misconduct by vouching for the credibility of the state's witness.

Issue XV. [Petitioner] was denied a fair trial in violation of the due process clause due to cumulative trial errors.

Id., 2005 WL 2479749, Brief of Appellant[3] (June 20, 2005). The KCA methodically considered each of plaintiff's claims and affirmed his conviction in a written opinion filed March 24, 2006.[4] They found

---

[3]     Other issues presented in Murray's brief but not raised in this federal Petition are: (I) insufficient evidence at preliminary hearing of intention to kill; (II) improper denial of pre-trial motion to dismiss based on failure to establish probable cause on attempted second degree murder charge; (VII) prosecutor committed misconduct by allowing perjured testimony; (IX) prosecutor committed misconduct by referencing religious comments; (X) trial court erred in allowing evidence of subsequent unrelated, uncharged fight; (XI) no medical proof of causation of victim's injuries; (XII) insufficient evidence of physical injury for aggravated battery, and instruction on bodily harm/ injury was erroneous; (XIII) trial court erred in giving aiding and abetting instruction; (XIV) inaccuracies in the presentence investigation report; (XVI) petitioner was sentenced under unconstitutional sentencing guideline. Id.

[4]     In its unpublished opinion, the KCA summarized the claims:

In this pro se appeal, Murray raises 11 claims of error: Insufficient evidence was presented at Murray's preliminary hearing; the trial court abused its discretion by denying Murray's motion in limine requesting the exclusion of evidence of his gang membership; the trial court abused its discretion by denying Murray's motion for a mistrial; five incidents of misconduct by the prosecutor denied Murray a fair trial; the trial court abused its discretion by admitting evidence of an uncharged crime; there was insufficient evidence to support Murray's conviction for aggravated battery; the court abused its discretion when it responded to a jury question; the jury instructions taken as a whole constitute reversible error; the presentence report was erroneous; Murray's increased sentence was a Sixth and Fourteenth Amendment violation; and Murray did not receive a fair trial because of cumulative errors.

Id. at *1.

that each individual claim of error was without merit, and rejected petitioner's claim of cumulative error.  Id. at *8.

On April 6, 2006, petitioner filed a motion for rehearing.[5] He alleges that in the meantime, he drew up a Petition for Review. He further alleges that during a prison shakedown on April 18, 2006, all his legal materials were confiscated.  His motion for rehearing was denied by the KCA on April 26, 2006.  On April 27, the KCA issued its mandate.  On May 1, 2006, petitioner filed a motion to stay mandate and for extension of time to file a Petition for Review[6]; and on May 5, 2006, the Kansas Supreme Court denied his motions.  Petitioner alleges in his Traverse before this court that he was prevented from filing a Petition for Review when "the KDOC confiscated his legal materials during a shakedown."

### First Motion for Post-Conviction Relief

Also in May 2006, petitioner filed a state post-conviction motion pursuant to K.S.A. 60-1507 and a separate Motion for New Trial in the district court.  See Murray v. State, 171 P.3d 285, 2007 WL 4246890 (Kan.App. Nov. 30, 2007).  In these two motions, he raised 17 claims.  Id. at *1.  Respondents state and Murray does not controvert that he raised the "exact same issues presented on

---

[5]     Rule 7.05(a) of the Kansas Sup. Ct. Rules pertinently provides:

A motion for rehearing . . . in a case decided by the Court of Appeals may be served and filed within ten (10) days of the decision.  . . .[N]or shall such a motion extend the time for the filing of a petition for review by the Supreme Court.

[6]     Rule 8.03(a)(1) of the Kansas Sup. Ct. Rules provides:

Time for Filing.  The petition (for review) shall be served and filed with the clerk of the appellate courts within thirty (30) days after the date of the decision of the Court of Appeals.  The thirty-day period is jurisdictional.

direct appeal" plus one.  On July 26, 2006, the district court issued a Memorandum Decision and Order, in which the judge held that all claims, save one, were barred by Rule 183(c)[7] of the Kansas Sup. Ct. Rules prohibiting the use of a post-conviction proceeding as a substitute for direct appeal.

The exception was petitioner's added, new claim of ineffective assistance of counsel.  In support of this claim, Murray alleged that trial counsel failed to present a defense of voluntary intoxication.  The state court determined that counsel's failure to present this defense did not fall below an objective standard of reasonableness, and that nothing in the record suggested a different verdict would have resulted had this alternative trial strategy been employed.  Petitioner filed a motion to reconsider, in which he attempted to raise several new grounds in support of his claim of ineffective assistance of trial counsel[8], but the district court denied the motion on November 8, 2006.

Murray appealed to the KCA, raising 15 issues.  The KCA held that the "first 14 issues constitute claimed trial errors which were either considered and rejected in Murray's direct appeal or could have been raised in the direct appeal."  Id.  Like the

---

[7]    Rule 183(c)(3) pertinently provides:

. . . [A] proceeding under K.S.A. 60-1507 cannot ordinarily be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal.  Mere trial errors are to be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided there were exceptional circumstances excusing the failure to appeal.

[8]    Most were the trial errors rejected on direct appeal, asserted as evidence that trial counsel was ineffective.

district court, they cited Sup. Ct. Rule 183(c) and held that a "proceeding under K.S.A. 60-1507 cannot ordinarily be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal." <u>Id</u>. They reasoned that:

> [U]nder Kansas law, where an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and those issues that could have been presented, but were not presented, are deemed waived.

<u>Id</u>. (citation omitted). The KCA then found that Murray's "only issue on (this) appeal, other than the claimed trial errors, is his claim of ineffective assistance of trial counsel, based primarily on counsel's failure to pursue a voluntary intoxication defense." <u>Id</u>. They noted that this issue was "considered and addressed by the district court" whose summary dismissal was "adequately explained" in its memorandum decisions, and that their own thorough review had revealed no reversible error. They thus affirmed the trial court's denial of both motions on November 30, 2007. <u>Id</u>. The Kansas Supreme Court denied a Petition for Review on April 23, 2008.

### **Motion to Correct Illegal Sentence**

In April, 2007, while the appeal was pending on his state post-conviction motions, Murray filed a motion to correct illegal sentence. In this motion, according to the KCA, he claimed that "the trial court lacked jurisdiction to sentence him because the complaint was defective for not listing aggravated battery," and that "the complaint was defective for failing to include an essential element of 'attempt'." <u>See</u> <u>State v. Murray</u>, 180 P.3d

624, at *1 (Kan.App. Apr. 11, 2008). The trial court ruled it did not lack jurisdiction on these grounds, and denied relief.

Petitioner appealed to the KCA, where he argued "the complaint was defective because it omitted the element that he failed to consummate the crime." Id. The KCA found that Murray was improperly seeking to "collaterally attack his conviction under the guise of correcting an illegal sentence." Id. They noted the trial court's findings in ruling on Murray's motion:

> [T]he complaint alleged an attempt crime and correctly cites the applicable statutes; Murray was provided with full disclosure of the State's evidence at the preliminary hearing; there was no suggestion Murray was unaware of the charged crime, nor was he prevented from presenting a defense to that charge; Murray was formally arraigned, where he confirmed his awareness of the charge and was fully able to provide a defense; and his defense resulted in conviction of the lesser included offense.

Id. The KCA then held that while the lower court had clearly denied the claim on the merits, it was affirming the denial on a different basis: that the relief sought was "unavailable in a motion to correct an illegal sentence." Id. at *2. The Kansas Supreme Court denied a Petition for Review on May 28, 2008.


### Third Motion for Post-Conviction Relief

On October 9, 2007, again with a separate state proceeding pending, Murray filed another motion pursuant to K.S.A. 60-1507. This motion was considered and denied by the district court. Murray appealed the denial to the KCA "arguing defects in the complaint and information and ineffective assistance of trial counsel." See Murray v. State, 187 P.3d 608, at *1 (Kan.App. July 18, 2008). The KCA described this 60-1507 motion as raising "seven

allegations of error":

> (1) the district court lacked jurisdiction over
> his underlying criminal case because the charging
> document was defective by omitting an essential
> element of "attempt";
> (2) Murray was denied adequate notice and a fair
> trial; (3) the district court "improperly
> broadened the complaint by furnishing the missing
> element of attempt in the jury instructions"; (4)
> Murray was convicted of an offense not alleged in
> the complaint in violation of his due process
> rights; (5) the district court was forbidden from
> directing a verdict against Murray on any element
> of a crime not alleged in the complaint; (6) the
> district court was forbidden from taking judicial
> notice of any element of a crime that was not
> alleged in the complaint; and (7) Murray was
> denied effective assistance of counsel due to
> counsel's failure to "move the district court to
> arrest judgment on the defective complaint."
> Murray also argued he had been prevented from
> raising these issues during his direct appeal or
> prior K.S.A. 60-1507 motion by his trial counsel's
> failure to object to the errors at trial.

Id. The KCA noted the lower court's findings:

> The district court found Murray presented
> sufficient evidence of exceptional circumstances
> or manifest injustice to excuse him from the
> K.S.A. 60-1507(f) requirement of filing within 1
> year or from raising the issues in a prior
> proceeding. Considering Murray's issues on their
> merits, the court found: (1) The complaint was
> sufficient; (2) Murray received a fair trial; (3)
> the jury instruction was proper; (4) Murray did
> not suggest he was not aware of the crime with
> which he was charged and was able to present a
> defense; and (5) Murray had established no
> prejudice to his defense through any actions of
> defense counsel.

Id. at *2. The KCA disagreed with the district court's procedural

ruling:

> We are not inclined to agree with the district
> court's finding that Murray demonstrated
> exceptional circumstances or manifest injustice,
> thus excusing his belated and successive motion.
> Murray's principal claims of error are based on
> his argument that the complaint was defective; a
> defective charging document is a trial error that
> should have been raised on direct appeal. In

> Murray's case, the error was actually raised and determined in a prior post-conviction motion, at least by the district court. The filing of a K.S.A. 60-1507 motion is not to be used as a substitute for a second appeal or merely to raise an issue decided previously. Supreme Court Rule 183(c), (d) (2007 Kan. Ct. R. Annot. 243); See State v. Harp, 283 Kan. 740, 156 P.3d 1268 (2007); McPherson v. State, 38 Kan.App.2d 276, 163 P.3d 1257 (2007). We conclude Murray failed to demonstrate either exceptional circumstances or manifest injustice to excuse his belated and successive motion.

Id. However, the KCA also stated:

> Notwithstanding our conclusion that Murray was not entitled to have his claims addressed on their merits, we note that the district court issued a comprehensive and well-reasoned memorandum decision explaining why Murray was not entitled to relief. The court's findings are well supported and the conclusions are legally sound.

Id. The Kansas Supreme Court denied review on November 4, 2008.


## **The Present Federal Petition**

Petitioner filed his initial habeas corpus petition in federal court on April 2, 2008. The grounds raised in this petition are: (1) the defense motion in limine as to skinhead references was improperly denied and prejudicial evidence was improperly admitted as a result; (2) the court's order in limine was violated resulting in denial of fair trial; (3) the State purposefully withheld exculpatory evidence including the criminal history of the victim, a co-defendant, and a witness, as well as the medical history records of the victim; (4) prosecutorial misconduct occurred in that the State goaded its witness Dupree into making a statement that violated the in limine order; (5) prosecutorial misconduct occurred in that the State vouched for the credibility of witness Dupree; (6) cumulative trial errors resulted

in denial of a fair trial, and (7) ineffective assistance of counsel in that defense counsel failed to preserve issues for appeal as instructed by petitioner and failed to investigate the victim's medical history records requested at the preliminary hearing (negligent pretrial investigation).

Petitioner improperly filed a second separate federal habeas corpus petition not long after the first. In his second petition, he expanded his account of the procedural history of his case and raised the additional claim or claims that: (1) the complaint/information was "fatally defective" and deprived the court of jurisdiction in that aggravated battery was not charged therein; (2) the complaint/information was fatally defective in that essential elements of attempted second degree murder were omitted; (3) the court "improperly broadened" the complaint/information by "furnishing the missing elements of attempt" in the jury instructions; and (4) the district court "essentially directed a verdict for the state" on the elements of attempt which were not in the information/complaint. Respondents filed a second Answer and Return responding to the second petition, and Mr. Murray filed a second Traverse.

**STANDARDS OF REVIEW**

### The AEDPA Standard

A federal court does not sit as a super state appellate court. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984). When a federal court reviews a state prisoner's

petition pursuant to 28 U.S.C. § 2254 it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." <u>Id</u>. The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern federal court review. Under AEDPA, an applicant is entitled to federal habeas relief only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); <u>see also Williams v. Taylor</u>, 529 U.S. 362, 404-05 (2000); <u>Hale v. Gibson</u>, 227 F.3d 1298, 1309 (10th Cir. 2000). In the words of the Supreme Court, under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts;" and under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, at 412-413. Factual findings by the state trial and appellate courts are presumed correct, with petitioner having the burden to rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>Darks v. Mullin</u>, 327 F.3d 1001, 1007 (10th Cir.), <u>cert</u>. <u>denied</u>, 540 U.S. 968 (2003); <u>Smallwood v. Gibson</u>, 191 F.3d 1257, 1265 (10th Cir. 1999).

Pursuant to Rule 8 of the rules governing section 2254 proceedings, the court finds an evidentiary hearing is not required in this case. "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Anderson v. Att'y Gen. of Kansas</u>, 425 F.3d 853, 859 (10th Cir. 2005)("an evidentiary hearing is unnecessary if the claim can be resolved on the record."). As the court has determined that petitioner's allegations are contravened by the record and he is not entitled to habeas relief, it finds that petitioner is not entitled to an evidentiary hearing.

**Doctrine of Procedural Default**

A writ of habeas corpus may not be granted unless the applicant has exhausted his available state court remedies. 28 U.S.C. § 2254(b)(1). In order to exhaust state remedies, petitioner is required to give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>Demarest v. Price</u>, 130 F.3d 922, 932 (10th Cir. 1997)("'Fair presentation' of a prisoner's claim to the state courts means that the substance of the claim must be raised there."); <u>Dever v. Kan. State Penitentiary</u>, 36 F.3d 1531, 1534 (10th Cir. 1994)(Exhaustion requires that the "federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack.").

In <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991), the Supreme

Court held that if a petitioner fails "to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,"[9] petitioner's claims are procedurally defaulted for purposes of federal habeas review. <u>Id</u>. at 735 FN 1; <u>see</u> <u>also</u> <u>Dulin v. Cook</u>, 957 F.2d 758, 759 (10th Cir. 1992)(A petitioner's failure to properly present his claims in state court for exhaustion purposes constitutes "procedural default for the purposes of federal habeas review."); <u>Walker v. Att'y Gen. for Okla.</u>, 167 F.3d 1339, 1344 (10th Cir. 1999). Stated more specifically and relevantly for this case, where the appellate process is no longer available for review of an unexhausted claim due to a petitioner's failure to timely present the issue for appellate review, he has procedurally defaulted such claim. <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 848.

A federal district court may review procedurally defaulted § 2254 claims only if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750. To show cause for the default, the petitioner must demonstrate "that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Examples of such

---

[9] A state procedural bar must be adequate and independent. It is independent if it relies on state law, rather than federal law, as the basis for the decision. To be adequate, a state procedural bar or rule must have been firmly established and regularly followed when the purported default occurred. <u>McCracken v. Gibson</u>, 268 F.3d 970, 976 (10th Cir. 2001), <u>cert.</u> <u>denied</u>, 537 U.S. 841 (2002).

external factors include the discovery of new evidence, a change in the law, and interference by state officials.  Id.; McCleskey v. Zant, 499 U.S. 467, 493-94 (1991); Maes v. Thomas, 46 F.3d 979, 987 (10th Cir.), cert. denied, 514 U.S. 1115 (1995).

If a petitioner cannot establish cause and prejudice, his only other means of gaining federal habeas review of his procedurally defaulted issues is a claim of actual innocence under the fundamental miscarriage of justice exception.  Herrera v. Collins, 506 U.S. 390, 403-404 (1993); Sawyer v. Whitley, 505 U.S. 333, 339-341 (1992).  To meet this test, a criminal defendant must make a colorable showing of factual innocence.  Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000)(citing Herrera, 506 U.S. at 404); see Bousley v. U.S., 523 U.S. 614, 623 (1998).


**DISCUSSION**

Having carefully compared petitioner's claims in the state courts with those presented in his federal Petition and having thoroughly studied the state court record, the court finds that all of petitioner's claims were procedurally defaulted in state court. All but one were procedurally defaulted by Mr. Murray's failure to properly present them to the highest state court in a timely Petition for Review of the KCA's decision on direct criminal appeal.  Since the appellate process is obviously no longer available for review of these claims, they have been procedurally defaulted.

The state trial court, when faced in petitioner's first 60-1507 motion with the same claims he had presented to the KCA on direct criminal appeal, expressly held that all were procedurally

barred by Ks. Sup.Ct. Rule 183(c). On appeal of that decision, the KCA likewise held these claims presented issues that either had been raised and rejected on direct appeal or should have been raised on direct appeal, and summarily dismissed them based upon the same state rule.[10] The KCA's decision, which was the last explaining its resolution of these claims, was independent because it was based upon a state supreme court rule, not federal law; and Rule 183 was both firmly established and had been regularly applied by the KCA.[11] See Zimmer v. McKune, 87 F.Supp.2d 1153, 1158 (D.Kan. 2000)("It is well established in Kansas that a 60-1507 motion cannot be used as a substitute for a direct appeal involving mere trial errors or as a substitute for a second appeal.")(citing cases). The KCA's decision was a clear and express statement that the state procedural bar served as the basis for its judgment. See Harris v. Reed, 489 U.S. 255, 262-63 (1989)(procedural default bars review on federal habeas corpus when state court clearly and expressly bases its judgment on state procedural bar); Church v. Sullivan, 942 F.2d 1501, 1507 (10th Cir. 1991)(The state procedural rule is independent if the last state court rendering a judgment in

---

[10]    Petitioner's belief that the Kansas Supreme Court either had adequate opportunity to or did address the merits of these issues on direct appeal indicates his misunderstanding of exhaustion.  Since these claims were not presented for that court's review in a timely manner, they were not fully and properly exhausted.  Petitioner could be directed to attempt to exhaust claims in state court, but the Kansas courts routinely apply a procedural bar unless the petitioner shows "exceptional circumstances" for his failure to raise claims in an earlier proceeding.  Because these claims would clearly be subject to that state bar, it would be futile to require exhaustion at this point.  See Duckworth v. Serrano, 454 U.S. 1, 3 (1981); Coleman, 501 U.S. at 722.  Furthermore, because exhaustion would now be futile, these claims are technically no longer barred by the exhaustion prerequisite.  Nonetheless, when state-court remedies are thus "technically exhausted" they are also "procedurally defaulted" because the state court was not given full and fair opportunity to hear the claims.  O'Sullivan, 526 U.S. at 842.

[11]    Petitioner does not challenge either the independent nature or the adequacy of the procedural bars applied by the state courts.

15

the case "clearly and expressly" stated that its decision rested upon a state procedural bar.)(citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04 (1991)).  This court concludes that the KCA decision thus establishes petitioner's procedural default of these claims. <u>Coleman</u>, 501 U.S. at 729-30.

Petitioner's various claims alleging defects in the charging document and asserting denial of due process were likewise procedurally defaulted due to Mr. Murray's failure to pursue these claims in a timely and proper manner in the state courts.[12]  These claims were not raised pretrial or during trial and a timely motion for arrest of judgment was not filed.  Nor did Mr. Murray raise these claims on direct appeal or in his initial 60-1507 petition. They were first raised in his subsequent Motion to Correct Illegal Sentence; and while the trial court rejected his challenge to its jurisdiction on the merits, the KCA denied relief holding the procedure was incorrect.  Thus, petitioner did not correctly raise any claim regarding defects in the complaint or inadequate notice of the charges until his third motion for post-conviction relief. The trial court again considered and denied his claims on the merits.  The KCA, however, expressly found Murray was not entitled to have his claims addressed on the merits because this 60-1507 motion was "belated and successive" and he had demonstrated neither exceptional circumstances nor manifest injustice.  The record establishes that the KCA expressly applied an independent state procedural bar to these claims.

---

[12]     Petitioner admits these issues were not raised on direct criminal appeal, but alleges it was because his appointed trial counsel did not identify or preserve them for appellate review.  However, as noted he chose to act as his own appellate counsel and filed his own appellate brief.

Mr. Murray's claim that his counsel was constitutionally ineffective at trial was not raised on direct appeal. However, under Kansas law, a claim of ineffective assistance of counsel is generally not procedurally defaulted by a defendant's failure to raise it on direct appeal, particularly when trial counsel also represents defendant on appeal.[13] Nevertheless, the court finds that Mr. Murray also procedurally defaulted the claim of ineffective assistance of trial counsel that he now attempts to present to this court. Murray properly and timely presented a claim of ineffective assistance of trial counsel in state court in his first 60-1507 petition. The state trial court and the KCA considered and rejected this claim on the merits, and the Kansas Supreme Court denied review. However, the only factual basis properly presented for this claim in his initial motion was trial counsel's failure to present a defense of voluntary intoxication.[14] Mr. Murray raised no claim regarding counsel in his second post-conviction filing. In his third post-conviction motion, he again claimed ineffective assistance of counsel. This time the grounds were that counsel failed to move to arrest judgment based on the defective complaint, and failed to object to trial errors, which allegedly prevented petitioner from raising the issues on direct appeal and in his initial 60-1507 motion. As noted, the KCA held

---

[13]    Under Kansas law, claims of ineffective assistance of counsel which were not raised and considered by the trial court can be pursued through either a motion to the appeals court on direct appeal to remand to the trial court for further fact finding or a collateral proceeding under K.S.A. § 60-1507. State v. Van Cleave, 239 Kan. 117, 716 P.2d 580, 583 (1986).

[14]    The court reiterates that Murray's motion for reconsideration in which he attempted to raise additional grounds for his ineffective assistance of counsel claim was denied. It follows that he did not properly present any other grounds for this claim in his first 60-1507 petition.

Mr. Murray's claims in this third motion were procedurally barred because the motion was "belated and successive." In Murray's federal Petition, his claim of ineffective assistance of trial counsel is based upon grounds that do not include failure to present a voluntary intoxication defense. Given that no other ground for this claim was properly exhausted in a timely manner, the court finds that petitioner procedurally defaulted all grounds raised in his federal Petition to support his claim of ineffective assistance of counsel.

From the foregoing analysis, the court concludes that federal habeas review of all petitioner's claims is barred, unless he demonstrates both cause for his procedural default and resulting prejudice, or that a fundamental miscarriage of justice will result if his claims are not considered. See Coleman, 501 U.S. at 749. Mr. Murray argues "cause" for failing to raise his claims on direct appeal based on two alleged circumstances: (1) that he was prevented by prison officials from filing a timely Petition for Review on direct criminal appeal, and (2) that his trial counsel was constitutionally ineffective. Murray's claim that he was prevented by prison officials from filing a timely Petition for Review is refuted by his own exhibits, which indicate the alleged impediment did not come about through no fault of his own. Mr. Murray was given the opportunity to go through the three boxes of legal materials in his cell and reduce them to one, but he refused. Prison officials then removed two boxes and left one. In addition, petitioner fails to explain what he was required to provide in connection with a Petition for Review and what particular legal papers were taken that prevented a timely filing. In brief, he

18

fails to state sufficient facts showing he was prevented by the acts of prison officials or by circumstances beyond his control from preparing and submitting a timely Petition for Review.

Petitioner also argues "cause" by alleging that he was prevented from raising claims on direct appeal as a result of his appointed trial counsel's failure to identify or preserve issues for appellate review. This argument fails because an ineffective assistance of counsel claim asserted as "cause" must have been presented to the state courts as an independent claim before it may be used to establish cause. See Murray, 477 U.S. at 489; Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Fleeks v. Poppell, 97 Fed.Appx. 251, 260-61 (10th Cir.), cert. denied, 543 U.S. 933 (2004). As already discussed herein, only one ground was properly exhausted by Mr. Murray in support of his claim of ineffective assistance of trial counsel, and it was not failure to identify or preserve issues for appellate review. Consequently, petitioner cannot rely on this procedurally defaulted ineffective-trial-counsel claim to show cause. See Spears v. Mullin, 343 F.3d 1215, 1253 (10th Cir. 2003)(citing see Edwards, 529 U.S. at 451-52). Given petitioner's failure to demonstrate cause, the prejudice prong need not be considered. The court concludes that Mr. Murray has not satisfied the "cause and prejudice" exception to excuse his failure to present his claims in a proper and timely manner for full review by the highest state court.

Nor has Mr. Murray demonstrated that he qualifies for review under the fundamental miscarriage of justice exception. Herrera, 506 U.S. at 403-404; Sawyer, 505 U.S. at 339-341. As noted, to be excused from procedural default on the basis of this

exception, petitioner must supplement his constitutional claim with a "colorable showing of factual innocence". <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986); <u>Brecheen v. Reynolds</u>, 41 F.3d 1343, 1356 (10th Cir. 1994), <u>cert</u>. <u>denied</u>, 515 U.S. 1135 (1995). He has not referred to any new evidence or omissions in the record, which indicate a significant probability that he was actually innocent. Neither his assertions of legal innocence[15] nor this court's thorough review of the record demonstrates that a miscarriage of justice would result if these issues are not heard on the merits. The court concludes that federal habeas review of all Mr. Murray's claims is barred, and this federal Petition is denied solely on that basis.

The court includes the following comments indicating that even if federal habeas review were not barred on petitioner's claims and they were considered on the merits, Mr. Murray would not be entitled to relief. In the first place, it is clear from the written opinions of the KCA on direct appeal and in post-conviction proceedings, that to the extent the issues raised herein were considered by the state courts, petitioner has not shown that their decisions involved either an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts in light of the evidence in the record. Secondly, petitioner's claims are not shown to have factual or legal merit.

The gist of three of petitioner's federal claims is that statements more prejudicial than probative were improperly admitted

---

[15] For example, petitioner cannot argue miscarriage of justice based upon his claim that the charging document was defective, as this suggests a "mere legal insufficiency" rather than "factual innocence". <u>Bousley</u>, 523 U.S. at 623.

at his trial.  Those claims are that the trial court improperly denied defendant's motion in limine with respect to statements regarding skinheads and their beliefs;[16] that a mistrial should have been declared because the part of the court's order prohibiting the use of statements regarding swastikas and Hitler was violated; and prosecutorial misconduct in that the prosecutor prodded a witness into describing defendant's tattoos using words that violated the court's limine order.[17]  Petitioner alleges, among other things, that these "references" were inadmissible hearsay, improper evidence of bad reputation, intended to show guilt by association with a gang, lacked probative value, were outcome determinative, denied him a fair trial, and violated due process.  However, these allegations are completely conclusory and thus insufficient to state a claim.  Murray's claim regarding the violation of the order in limine was considered by the KCA on direct appeal.  Its explicit findings are supported by the record and are not shown to conflict with Supreme Court precedent.[18]

---

[16]     Petitioner cites as legal support, e.g., State v. Tran, 252 Kan. 494, Syl. ¶ 6, 847 P.2d 680 (1993)("Evidence of gang affiliation indicating a defendant is a member of a gang or is involved in gang-related activity is admissible to show a motive for an otherwise inexplicable act.  Such evidence, however, is only admissible where there is sufficient proof that such membership or activity is related to the crime charged.").

[17]     A prosecutor's misconduct will require reversal of a state court conviction only where the remark "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Spears, 343 F.3d at 1245 (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also Duckett v. Mullin, 306 F.3d 982, 988 (10th Cir. 2002.).

[18]     The KCA found facts from the record and held as follows:

    Here, the order in limine prohibited any mention of swastikas or reference to Nazi beliefs.  During the State's direct examination . . . (t)he prosecutor . . . asked Dupree what kind of tattoos Murray had, to which Dupree responded, "Swastika.  He has a little picture of Adolph Hitler and I'm not for sure everything, you know."  Counsel for Murray immediately moved for a mistrial.  (He) acknowledged that the testimony concerning swastikas and Hitler was probably elicited inadvertently, but . . . argued the mere mention

21

This court has independently reviewed the entire record together with the allegedly improper comment by the prosecutor in opening, the witness statement that violated the court's order, and the various testimony of witnesses regarding petitioner's biased views and statements surrounding the offense to determine whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Johnson v. Gibson, 169 F.3d 1239, 1250 (10th Cir. 1999)(citing Donnelly, 416 U.S. at 643). The record discloses that evidence of Murray's biased views was clearly introduced to show his motive rather than guilt by association with a gang or prior criminality. Furthermore, contrary to petitioner's bald allegation, substantial evidence was presented at trial that he held and expressed skinhead views and that those views "supplied a motive" for his otherwise "inexplicable acts." Petitioner has thus shown no due process violation under Donnelly. Id.; see Brecheen, 41 F.3d at 1354-56.

Petitioner's claim that the State withheld exculpatory evidence similarly lacks factual and legal basis. It concerns two

of those words were nonetheless highly prejudicial to Murray.

The following morning, the court denied Murray's motion for mistrial, finding a violation of the order in limine had occurred but that the testimony did not cause Murray substantial prejudice . . . .

It is clear that a violation of the court's order in limine occurred when Dupree testified about the nature of Murray's tattoos. Then the question becomes whether that testimony substantially prejudiced Murray. From our review of the transcript, we conclude that one isolated statement by Dupree, in the context of a 3-day trial, did not cause Murray substantial prejudice. The court admonished the jury to disregard the testimony, and no further mention was made of the nature of Murray's tattoos either by witnesses or during closing arguments. As a general rule, an admonition to the jury normally cures any prejudice from the improper admission of evidence. State v. Gleason, 277 Kan. 624, 642, 88 P.3d 218 (2004). We find no error here.

State v. Murray, 130 P.3d 593, at *2-*3.

sets of records not created in connection with his case. He complains that the State did not provide him with the victim's medical records from before the assault, and the prior criminal records of Dupree, the victim, and another State's witness. The KCA expressly considered and rejected these claims.[19] To establish a Brady[20] violation a defendant must show (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the accused; and (3) that the evidence was material. U.S. v. Pearl, 324 F.3d 1210, 1215 (10th Cir. 2003)(citing Smith v. Sec'y of N.M. DOC, 50 F.3d 801, 824 (10th Cir. 1995)(internal quotation marks omitted)); see also Spears, 343 F.3d at 1256 (citing see Strickler v. Greene, 527 U.S. 263, 281-82 (1999)).

Here, Murray has not described any particular information in the victim's medical history that was material and exculpatory or impeaching. Nor has he alleged facts regarding any witness's criminal history, beyond the conclusory statement that each was

---

[19]    Murray argued before the KCA that the prosecutor withheld exculpatory evidence "by failing to turn over Alexander's medical files regarding his previous disabilities as well as the (victim's and witnesses') criminal records." See State v. Murray, 130 P.3d 593, at *4. He contended this evidence could have been used for impeachment and to support a self-defense theory. Id. The KCA held:

> Murray suggests the criminal records may have included crimes involving dishonesty, and he asserts Alexander's "missing" medical files could have been used for impeachment purposes. The record simply does not substantiate Murray's characterization of this evidence, however.
> Even if the evidence was exculpatory, we cannot conclude the evidence was material to Murray's guilt. Evidence is considered material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine a court's confidence in the outcome. Akins, 261 Kan. at 383. Contrary to Murray's assertion, the evidence against him was overwhelming. We find no misconduct here.

Id.

[20]    Brady v. Maryland, 373 U.S. 83 (1963).

23

previously convicted of a crime involving dishonesty.[21]  Moreover,

he provides no evidence that the prosecution ever possessed these

records, or withheld them from him.  Contrariwise, it appears the

State had an open file policy.  No facts are alleged showing bad

faith on the part of the State in failing to collect this evidence

and make it available to him.  Petitioner has not met his burden of

either showing the state court's determination was a misapplication

of the Supreme Court's <u>Brady</u> jurisprudence, or rebutting its

factual findings by clear and convincing evidence.  Since Murray

does not describe any material and exculpatory content in these

records, he obviously fails to provide evidence of a "'reasonable

probability' that had the evidence been disclosed the result at

trial would have been different."  <u>See</u> <u>Wood v. Bartholomew</u>, 516

U.S. 1, 5-6 (1995)(citations omitted); <u>U.S. v. Bagley</u>, 473 U.S.

667, 682 (1985).  Murray presents no facts whatsoever indicating he

could have plausibly defended at trial on the basis that

Alexander's preexisting conditions accounted for his severe

injuries.  Nothing in the record suggests that the victim's prior

conditions of borderline diabetes, heart problems, and depression

would have been material to the jury's verdict.[22]  The evidence that

the blows by Murray as well as Dupree caused the victim life-

---

[21]     Evidence that Alexander was on probation at the time of the attack
(Transcript of Trial at 164), and that Dupree had been convicted based upon his
part in the attack came out at trial.  These witnesses were vigorously cross-
examined by defense counsel as to their prior inconsistent statements.

[22]     Petitioner makes much of the fact that he personally subpoenaed the
victim's medical records, but was denied access when they were sealed upon
delivery to the state court.  However, his subpoena was not issued during trial,
but years later during his pursuit of post-conviction relief.  He states that at
the preliminary hearing his counsel requested all the victim's medical files but
the record shows instead that counsel asked with respect to the victim's "mental
condition": "Who was your physician and where were you diagnosed" and if
Alexander "could provide that to the county attorney."  <u>State v. Murray</u>, Case No.
03-CR-22, Transcript of Preliminary Hearing at 83.

threatening injuries was overwhelming.[23]

The court also notes that petitioner's claim that counsel was ineffective for failing to further investigate the victim's prior medical records and for failing to insist on their production was not properly exhausted in state court and is procedurally defaulted.

As to petitioner's claim that the prosecutor improperly vouched for the credibility of a State's witness, the record supports the KCA's decision that the prosecutor's questions regarding the provision in Dupree's plea agreement to testify truthfully did not amount to an expression of the prosecutor's opinion as to his credibility.

The court has already found petitioner's claim that trial counsel failed to identify and preserve issues for appellate review to be procedurally defaulted and barred. The court notes that this claim is also factually inadequate and refuted by the record. Mr. Murray does not make the usual claim that appellate counsel was

---

[23] Petitioner's defenses included that Dupree caused Alexander's injuries rather than Murray and that Alexander was not seriously injured. However, the evidence was that Dupree hit the victim over the head once with a mug and struck him twice, while Murray kicked him with steel-toed boots at least 5 to 15 times. Dupree, who testified he saw Murray kick the victim this number of times, left the scene to get a vehicle from the front parking and returned to find Murray continuing his attack. There was also evidence that Murray later bragged about taking over when Dupree stopped, to "stomp (Alexander's) ass".

Murray claimed before the KCA that the "State failed to establish medical proof of causation and that Alexander suffered physical injury." State v. Murray, 130 P.3d 593, at *6. The KCA found as follows:

. . . [T]there is substantial evidence establishing that Murray kicked and hit Alexander repeatedly and demonstrating the severity of Alexander's injuries. Even a week after the incident when Alexander sought treatment, Alexander had severe contusions and hemorrhages in his brain and bruising on his back. The physician characterized Alexander's injuries as life-threatening, and Alexander suffered permanent brain damage. (Citation omitted). There is sufficient evidence supporting the jury's determination that Murray intentionally caused great bodily harm to Alexander.

Id.

ineffective for failing to present issues on appeal, probably because he acted as his own appellate counsel. Instead, he suggests he was somehow compelled to exclude issues on direct appeal because his counsel failed to object at trial. Contrary to this claim, the record shows that Mr. Murray indeed presented numerous claimed errors to the KCA on direct appeal, including some that were not objected to at trial. The record also reveals that, contrary to Murray's bald statement, defense counsel made some objections. Furthermore, the record does not support a claim that counsel's performance fell below constitutional standards when he did not object to the prosecutor's comment in opening that defendant "is a self-proclaimed skinhead,[24]" the testimony of witnesses regarding Murray's skinhead views, the charging document, or the instructions on lesser included offenses.[25]

Finally, the court discusses petitioner's claims regarding the charges. Petitioner claims that the complaint in his case, which charged the single offense of attempted second degree murder, was "constitutionally deficient" in that "essential elements of the offense were omitted." He also challenges his conviction of aggravated battery because this offense was not charged in the complaint. He asserts that his rights under the Sixth Amendment to

---

[24] On hearing defendant's pretrial motion in limine, the court found based upon evidence at the preliminary hearing that evidence regarding Murray's "skinhead" views was "admissible to show motive for an otherwise inexplicable act." State v. Murray, Case No. 03-CR-22, Transcript of Hearings on Pretrial Motions, at 15. Thus, the prosecutor's statement in opening indicating the State intended to present testimony of Murray's skinhead beliefs was not improper. The State presented testimony that Murray was motivated by his views to lure outside a bar and viciously kick the victim, who was a stranger to him, without other provocation or explication. In any event, as the state court noted and the jury was instructed, the opening remarks of counsel were not evidence.

[25] "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray, 477 U.S. at 486.

notice and a fair trial were violated and he was denied due process[26]. He alleges in support that he did not receive adequate notice of the charges giving him fair opportunity to prepare his defense. He argues that these errors deprived the court of subject matter jurisdiction, and hence review cannot be barred by a state procedural rule.

In support of his claims of error in the charging of attempted second degree murder, petitioner alleges that in Kansas an "attempt crime has three essential elements: (1) intent to commit the crime; (2) an overt act toward the perpetration of the crime; and (3) a failure to consummate the crime." He claims the complaint omitted essential elements of attempt, namely an overt act and a failure to consummate the crime.

Contrary to petitioner's assertion, the Second Amended Complaint/Information expressly provided that he committed the "overt act towards the completion of the crime of murder in the second degree" of "the infliction of potentially fatal injuries upon the victim." Furthermore, there can be little doubt that the charge of "attempted" second degree murder with citation to the attempt statute sufficiently apprised defendant of failed

---

[26]     The Sixth Amendment of the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . ." See also Kansas Constitution, Bill of Rights, Section 10; State v. Daniels, 223 Kan. 266, 272, 573 P.2d 607 (1977). The sufficiency of an indictment is judged by whether the indictment apprises the defendant of the charges he must meet and whether the defendant would be protected against double jeopardy by a judgment on the indictment. See U.S. v. Young, 862 F.2d 815, 819 (10th Cir. 1988)(citing Russell v. U.S., 369 U.S. 749, 763-64 (1962)); U.S. v. Moore, 198 F.3d 793, 795-96 (10th Cir. 1999), cert. denied, 529 U.S. 1076 (2000); U.S. v. Lepanto, 817 F.2d 1463, 1465 (10th Cir. 1987). Under federal law, not all omissions or other defects in a charging document are jurisdictional error. See U.S. v. Cotton, 535 U.S. 625, 631 (2002).

consummation,[27] if he were somehow unaware that the victim lived. While the omission of an element is error, when the evidence proving an element is "overwhelming" and "essentially uncontroverted," the failure to allege that element does not seriously affect the fairness or integrity of judicial proceedings. See Cotton, 535 U.S. at 632-33 (quoting Johnson v. U.S., 520 U.S. 461, 470 (1997)). The real issue is whether the defendant was provided with a clear understanding of the charge. See U.S. v. Edmonson, 962 F.2d 1535, 1542 (10th Cir. 1992)(The statute need not be fully quoted if the allegations adequately put the defendant on notice of the charge.). The complaint also apprised defendant of the person he was alleged to have attempted to murder and the time and place of the offense. See Resendiz-Ponce, 549 U.S. at 108. In addition, sufficient disclosures concerning the State's evidence and witnesses were made at the preliminary hearing.

Petitioner's allegations of prejudice are nothing but conclusory statements. See Moore, 198 F.3d at 796. He does not explain what trial evidence he was unable to anticipate from the charging instrument or how he was surprised and thus hampered in the preparation of his defense. This court's own review of the record indicates that adequate notice of the charge of attempted second degree murder was provided in the complaint to allow defendant's counsel to prepare and present a defense to this

---

[27]    See U.S. v. Resendiz-Ponce, 549 U.S. 102, 107 (2007)("[T]he word 'attempt' . . . connote(s) action rather than mere intent . . . (and) encompasses both the overt act and intent elements."). Petitioner relies upon inapposite cases where the element of an overt act was omitted from a conspiracy indictment when an overt act was expressly required by the criminal statute to be charged.

charge.[28]   Thus, to the extent that Mr. Murray has attempted to

raise a Sixth Amendment challenge to the complaint, he has utterly

failed.  See Amos, 189 Fed.Appx. at 834; Johnson, 169 F.3d at 1252;

Moore, 198 F.3d at 796.   In addition, petitioner makes no

allegation and there is no indication in the record, that due to

the alleged defects, the Double Jeopardy Clause will not protect

him from subsequent prosecution.

     Petitioner makes several arguments in support of his claim

---

[28]    As noted, Murray did not challenge the charging document until his
third state post-conviction filing, where the KCA held his claims were
procedurally barred.  However, the lower state court cited state law and entered
the following findings, which are supported by the record:

> When a Motion filed under K.S.A. 60-1507 claims Trial counsel was
> ineffective because counsel failed to file a Motion to Dismiss or to
> Arrest Judgment on grounds that the complaint was defective, the
> common sense rule of State v. Hall, 246 Kan. 728 (1990) overruled on
> other grounds by Ferguson v. State, 276 Kan. 428 (2003) is used to
> analyze the prejudice prong in the test for ineffective assistance
> of Trial counsel.
>
> * * *
>
> Under the common sense rule established in Hall, a charging document
> is sufficient, even if an essential element of an offense is missing
> if it would be fair to require the Defendant to defend based upon
> the charge as stated in the charging document.  Swenson, id.
>
> * * *
>
> "Murray was present for a comprehensive Preliminary Hearing after
> which he was bound over for arraignment on the charge of attempted
> Second Degree murder.  Formal arraignment was held, and Defendant
> plead not guilty to the charge in the amended complaint and
> information, which document cited the Attempt and Second degree
> murder statutes.  No evidence within the record is cited or set
> forth by Petitioner to suggest that he was not fully aware of the
> nature of the charge filed against him. . . .  Petitioner had full
> notice of the charge and the nature of the charge filed against him,
> and no due process violation occurred.  Trial counsel was certainly
> fully aware of the nature of the charge filed against Defendant and
> presented a vigorous defense to charge filed against Movant. . . .
> Petitioner has failed to establish any prejudice through defense
> counsel's failure to file a Motion to Arrest Judgment in that
> counsel presented a defense to the charge in such a successful
> manner that Murray was convicted of a lesser-included offense. . .
> .  The Jury Instructions given were suggested by the Defendant, and
> fairly stated the law as applied to the facts of the case. . . .
> Murray makes no claim that the elements of aggravated battery were
> not proven.

Murray v. State, Case No. 07-CV-15 (D.Ct. ED Co., Oct. 31, 2007)(Memorandum and
Decision and Order).

that he was not properly charged with the offense of aggravated battery. He mainly claims that his conviction of this offense was illegal because it was not specifically charged in the complaint.[29] While he is correct that this offense was not specified in the complaint, his claim that the trial court lacked jurisdiction as a result is without legal merit. A court's jurisdiction is not limited solely to those offenses actually specified in the complaint. It has long been established that the trial court in a criminal action also has jurisdiction over lesser included offenses arising from the original charge.

The more precise issue is whether or not petitioner was properly convicted of aggravated battery as a lesser included offense of attempted second degree murder.[30] The short answer here is that what constitutes a lesser included offense in Kansas is determined under state law, and a federal habeas court does not sit to determine or review state law issues. "In Kansas, all crimes are statutory, and the elements necessary to constitute a crime must be gathered wholly from the statute." State v. Crockett, 26 Kan.App.2d 202, 205, 987 P.2d 1101 (Kan.App. 1999)(quoting State v. Sanford, 250 Kan. 592, 601, 830 P.2d 14 (Kan. 1992)). A lesser

---

[29] Petitioner asserts that the State violated his Fourteenth Amendment right to due process and Sixth Amendment right to a jury trial by charging him with one crime and then trying and convicting him of a separate crime. He also argues that the court improperly "took judicial notice of an element of aggravated battery." While petitioner does not specify which element of aggravated battery is missing with the charge of attempted second degree murder, it appears that Kansas courts currently find the element of intent to injure distinguishable from that of intent to kill.

[30] Under current Kansas law, the prosecutor could have charged Mr. Murray with attempted second degree murder and alternatively with aggravated battery. See State v. Hutchison, 218 P.3d 60, *6, 2009 WL 3630896 (Kan.App. October 30, 2009)(Table)("Charging in the alternative would seem to be the avenue open to the State to have attempted murder and aggravated battery considered for the same act of violence.")(citations omitted).

included crime is currently defined in Kansas by statute, which pertinently provides it is a "lesser degree of the same crime" or "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." K.S.A. 21-3107(2)[31].

The state trial court in petitioner's case, at the request of both counsel, determined that aggravated battery was a lesser included offense of the attempted second degree murder charge[32] and

---

[31] The present version of K.S.A. 21-3107(2) provides in pertinent part:

(2) . . . A lesser included crime is:

(a) A lesser degree of the same crime; . . . (or)
(b) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged. . . .

Id. K.S.A. 21-3107 was amended on July 1, 1998. The prior version read in pertinent part:

(2) . . . An included crime may be any of the following:

(a) A lesser degree of the same crime; . . . or
(d) a crime necessarily proved if the crime charged were proved.

Id. As to the prior version, the Kansas courts stated:

> For the most part, our courts have considered only subsection (2)(d), in reviewing convictions on lesser crimes or claims that instructions on lesser crimes should have been given. . . . [C]rimes under subsection (2)(d) are ordinarily spoken of as "lesser included crimes," . . . (and) are lower, or lesser, in order, in that they carry lesser penalty.

State v. Daniels, 12 Kan.App.2d 479, 301-02 (Kan. App. 1987).

[32] Under the former version of K.S.A. 21-3107, aggravated battery was sometimes treated as a lesser included crime of attempted murder. See e.g., State v. Williams, 268 Kan. 1, 19, 988 P.2d 722 (1999); State v. Morfitt, 25 Kan.App.2d 8, 15-16, 956 P.2d 719, rev. denied 265 Kan. 888 (1998)(Court determined that a lesser included offense instruction on aggravated battery was required because the evidence that was essential for proving the attempted first-degree murder charge also proved aggravated battery). In State v. Fike, 243 Kan. 365, 367, 757 P.2d 724 (Kan. 1988)(superceded by statute)), the Kansas Supreme Court stated, "[t]here are very few areas of the criminal law which have given the appellate courts more difficulty than the problem of lesser offenses under K.S.A. 1987 Supp. 21-3107." They then endorsed a two-prong test to determine whether a particular crime is a lesser included offense of another. The "first prong asks whether all of the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged," and "the second prong instructs that, even if the elements of the lesser crime are not included in the elements of the crime charged, the lesser crime might still be a lesser included crime if the factual allegations of the charging document and evidence at trial necessary to prove the crime charged would also necessarily prove the lesser crime." See State v. Belcher, 269 Kan. 2, 4, 4 P.3d 1137 (2000)(citing Fike, 243 Kan. at Syl. para. 1). However, when

that the evidence in petitioner's case supported a lesser included instruction on aggravated battery. Petitioner waived his right to challenge these rulings in several ways. First, he did not object to the charging document prior to trial. Second, counsel requested, rather than objected to, the instruction setting forth aggravated battery as a lesser included offense. Third, neither petitioner, who moved for trial counsel to withdraw, nor trial counsel filed a timely post-trial motion to arrest judgment. Fourth, petitioner acting as his own appellate counsel did not claim on direct appeal that the trial court lacked jurisdiction and that he was denied due process by the State's failure to include aggravated battery in the charging document or by the court's improper inclusion of aggravated battery as a lesser included offense. Fifth, petitioner failed to raise either claim in his first post-conviction motion. Thus, petitioner had many opportunities but failed to follow proper procedure to test these findings of the trial court in his case. The court has already held that these claims are procedurally defaulted[33] and are not

_____

the legislature revised K.S.A. 21-3107, it eliminated the "troublesome second prong" of <u>Fike</u>. <u>Id.</u> Despite the statute's revision over a decade ago, the Kansas Supreme Court found it necessary last year to again explicitly hold that aggravated battery is not a lesser included crime of attempted murder under the revised statute. <u>See</u> <u>Hutchison</u>, 218 P.3d 60, at **5.

[33] "Generally, under Kansas law, the failure to challenge defects in the charging instrument before trial constitutes a waiver." <u>Beem v. McKune</u>, 317 F.3d 1175, 1183 FN10 (10th Cir. 2003)(citing <u>State v. Sims</u>, 254 Kan. 1, 862 P.2d 359 (Kan. 1993)(citing <u>see</u> K.S.A. § 22-3208(3)("Defenses and objections based on defects in the institution of the prosecution or in the complaint . . . other than that it fails to show jurisdiction in the court or to charge a crime may be raised only by motion before trial. . . . Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver."); <u>see</u> also K.S.A. § 22-3208(4)("A plea of guilty or a consent to trial upon a complaint . . . shall constitute a waiver of defenses and objections based upon the institution of the prosecution or defects in the complaint . . . other than that it fails to show jurisdiction in the court or to charge a crime.")). "Notwithstanding the waiver statutes, a defendant can attack the charging instrument for lack of jurisdiction or failure to charge a crime, in a motion to arrest judgment, which must be filed within ten

reviewable in federal court as a result. 28 U.S.C. § 2254(c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995).

Moreover, whether the complaint in this case charging attempted second degree murder permitted a jury instruction on aggravated battery as a lesser included offense and whether an instruction implicates the State's fundamental error doctrine, are likewise matters solely within the province of the state courts. Cf. Johnson v. Gibson, 169 F.3d 1239, 1252 (10th Cir. 1999)("[T]he adequacy of a state criminal complaint presents a question of state law rather than federal law."); see also State v. Shirley, 277 Kan. 659, 89 P.3d 649 (Kan. 2004). As noted, under § 2254(a), federal courts may entertain an application for a writ of habeas corpus "only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States,"[34] and are not empowered to correct errors of state law. See Amos v. Roberts, 189 Fed.Appx. 830, 834 (10th Cir. 2006)(District court correctly found that (petitioner) presented a question of state law, not a cognizable claim for federal habeas corpus relief, by claiming that the charging document was defective.); Spears, 343 F.3d at 1245; see Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir. 1998). A state's interpretation of its own statutes does not raise

---

days of the verdict." Id. (citing Sims, 862 P.2d at 365 (citing K.S.A. §22-3502)).

[34] Petitioner's reliance upon Apprendi is misplaced. He is correct that a criminal defendant is "indisputably" entitled to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 477 (2000)(citations omitted). However, Apprendi more specifically held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Id. at 490. Mr. Murray does not allege that he was either "sentenced to a term higher than that attached" to the offense of attempted second degree murder, or "exposed to an increased range of penalties." See id. at 488.

33

a federal constitutional issue. It follows that a claim that the trial court erred in instructing the jury is not a proper basis for habeas corpus relief unless it is demonstrated that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." <u>See</u> <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977); <u>see also</u> <u>Shafer v. Stratton</u>, 906 F.2d 506, 508 (10th Cir.), <u>cert. denied</u>, 498 U.S. 961 (1990); <u>Maes</u>, 46 F.3d at 985 (claimed errors in jury instructions rise to the level of a constitutional violation only if they "rendered the trial so fundamentally unfair as to cause a denial of a fair trial"). The jury instructions at Murray's trial, taken as a whole, were not so infirm that they rendered the entire trial unfair. They contained all the correct statutory elements of the offenses of attempted second degree murder and of aggravated battery.[35] The record also plainly shows that the evidence was sufficient to convict Murray of aggravated battery.[36]

---

[35]    Jury instruction No. 4 in petitioner's trial provided that the elements of the completed crime of murder in the second degree are "That the Defendant intentionally killed Kenneth Alexander . . . ." The instruction further provided that to establish the charge of attempted murder in the second degree, the following must be proved: (1) That the Defendant performed an overt act toward the commission of the crime of murder in the second degree; (2) that the defendant did so with intent to commit the crime of murder in the second degree, and (3) that the defendant failed to complete the commission of the crime of murder in the second degree. Jury instruction No. 6 provided that the "offense of attempted murder in the second degree with which the Defendant is charged includes the lesser offense of aggravated battery or battery. You may find the Defendant guilty of attempted murder in the second degree, aggravated battery, battery, or not guilty." Instruction No. 7 provided that to establish "the lesser included offense of aggravated battery" one of three alternative claims must be proved including: (1) That the Defendant intentionally caused great bodily harm to or disfigurement of another person . . . ."

[36]    The KCA explicitly considered Mr. Murray's claim that insufficient evidence was presented at the preliminary hearing, and held:

> Murray was convicted by a jury of the lesser included crime of aggravated battery-a crime which defense counsel conceded was supported by sufficient evidence at the preliminary hearing. Thus, any error in binding Murray over for trial on the original charge is harmless.

Furthermore, Mr. Murray has failed to show that the decisions of the state courts on these claims were contrary to any clearly established Supreme Court precedent. 28 U.S.C. § 2254(d); cf., Fitzgerald v. U.S., 719 F.2d 1069, 1071 (10th Cir. 1983)(four-element test for federal lesser included offenses). A state court decision is "contrary to" clearly established Federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent. Williams, 529 U.S. at 388. Murray has not cited and this court has not uncovered a Supreme Court case "which forbids a trial court from giving a lesser included offense instruction" on aggravated battery in a trial for attempted second degree murder where the defendant had actual notice and "the charge is supported by the evidence." See Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Ault v. Waid, 654 F.Supp.2d 465, 477 (N.D.W.Va. 2009). Nor has he demonstrated that the state court's decision was based on an unreasonable determination of the facts.

Even if this court considered this claim on the merits, it would again find that petitioner has alleged insufficient facts to state a federal constitutional claim. Murray alleges no facts suggesting he was unaware of any element of aggravated battery or the probable evidence prior to trial, or that his counsel was unable to present a defense to this offense due to a lack of notice. On the contrary, defense counsel argued at the preliminary hearing that the evidence appeared sufficient to convict Murray of aggravated battery.

Finally, the court also notes that Mr. Murray did not

Id. at *2.

present a timely claim of ineffective assistance of counsel to the state courts based upon counsel's failure to object to the jury charge of aggravated battery as a lesser included offense. As a consequence, this specific attorney error is also procedurally defaulted. <u>Amos</u>, 189 Fed.Appx. at 833. In any event, trial counsel's conduct is not shown to have been constitutionally deficient in this respect. The defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms, and must overcome the presumption that the challenged action "might be considered sound trial strategy." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986)(citing <u>Strickland v. Washington</u>, 466 U.S. 668, 688-89 (1984)); <u>U.S. v. Smith</u>, 10 F.3d 724, 728 (10th Cir. 1993)(per curiam). Evaluating trial defense counsel's conduct in this case from counsel's perspective at the time, the record suggests he could reasonably have believed that an instruction on aggravated battery as a lesser included offense was beneficial to the defense, and he did not object to its inclusion as a matter of sound trial strategy. It has been observed that when the trial evidence shows the defendant is plainly guilty of some offense, but one of the elements of the offense charged is in doubt, the jury is likely to resolve its doubts in favor of conviction. The evidence of petitioner having caused serious harm to Alexander was overwhelming. Thus, defense counsel could have reasonably decided that Murray would be convicted, and exercised his professional judgment by allowing the jury to consider aggravated battery as a lesser option.

**<u>SUMMARY</u>**

In summary, the court finds that petitioner's claims were all procedurally defaulted in state court, and he has not shown cause and prejudice for his default or that a miscarriage of justice will result if his claims are not reviewed on federal habeas corpus. The court has also noted that his claims are without merit. The court concludes that Mr. Murray is not entitled to relief under § 2254, and his petition shall be denied.

**IT IS THEREFORE ORDERED** that Mr. Murray's request for an evidentiary hearing is denied and his petitions for writ of habeas corpus are denied.

**IT IS SO ORDERED**.

Dated this 6th day of July, 2010, at Topeka, Kansas.




<u>s/Sam A. Crow</u>
U. S. Senior District Judge